**E-Filed 4/12/10**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

STEVEN SIMON, MICHAEL KALLOCK AND
ALEXEY TERSKIKH, on Behalf of Himself and
All Others Similarly Situated,

        Plaintiffs,

        v.

ERIC STANG, LEN DEBENEDICTIS, HANK
GAUTHIER, and RELIANT TECHNOLOGIES,
INC.,

        Defendants.

Case Number C 10-00262 JF (HRL)

**ORDER[1] GRANTING AND PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS AND DEFERRING
DETERMINATION OF
PLAINTIFFS' MOTION FOR
REMAND**

[re doc. nos. 5 and 7]

      Defendants removed the action from the Santa Clara Superior Court pursuant to the

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb, and

now move under SLUSA and Fed. R. Civ. P. 12(b) to dismiss Plaintiffs' complaint.  Plaintiffs

simultaneously move for remand.  The Court has considered the moving and responding papers

and the oral argument of counsel presented at the hearing on April 2, 2010.  For the reasons

discussed below, Defendants' motion will be granted in part and denied in part, with leave to

---

[1] This disposition is not designated for publication in the official reports.

1  amend.  The Court will defer determination of Plaintiffs' motion pending amendment of the

2  complaint.

3                                    **I.   BACKGROUND**

4         Plaintiffs Steven Simon, Michael Kallok, and Alexey Terskikh (collectively,

5  "Plaintiffs") filed this putative class action in the Santa Clara Superior Court on December 12,

6  2009, alleging that Defendants Eric Stang, Len Debenedictis, Hank Gauthier, and Reliant

7  Technologies, Inc. (collectively, "Defendants") violated aspects of Delaware common law and

8  California statutes.  Defendants removed the action to this Court on January 20, 2010.

9         The complaint alleges the following facts:  Plaintiffs are former shareholders in Reliant

10 Technologies, Inc. ("RTI").  Complaint ¶¶ 7-9.  Defendants Stang and Debenedictis were

11 officers of RTI, and all three defendants served on RTI's board of directors.  Complaint ¶¶ 10-

12 12.  RTI was a Delaware corporation with its principal place of business in Mountain View,

13 California.  Complaint ¶ 13.  RTI was contemplating an initial public offering but instead

14 pursued merger negotiations with Thermage, Inc. ("Thermage").  Complaint ¶ 26.  Defendants

15 ignored other potential merger partners while engaging in self-dealing to ensure that RTI merged

16 with Thermage.  Complaint ¶¶ 26-28.  RTI's board of directors approved the merger with

17 Thermage, with one director abstaining.  Complaint ¶ 29.  Defendants did not provide Plaintiffs

18 with information regarding the merger or their rights, obtain approvals from all RTI

19 shareholders, or obtain a majority vote of RTI common shareholders.  *Id.*  Defendants proceeded

20 to file false statements with the SEC regarding the approval of the merger.  Complaint ¶¶ 29, 31,

21 33.  On December 23, 2008, RTI and Thermage completed the merger, and RTI became a

22 subsidiary of Thermage.  Complaint ¶ 16.  Thermage now does business as Solta Medical.

23 Complaint ¶ 22.  Plaintiffs seek remedies for: (1) breach of fiduciary duty, (2) violation of Cal.

24 Corp. Code § 2115, (3) constructive fraud in violation of Cal. Civ. Code § 1573, (4) violation of

25 California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200 *et seq*, (5)

26

27

28

Case Number C 10-262 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION ETC.
(JFEX1)

1   violation of the entire fairness standard, and (6) conspiracy.[2]

2                                **II. DISCUSSION**

3   **A.      Legal Standard**

4           "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

5   cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

6   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

7   dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

8   the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "To

9   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

10  to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the

11  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

13  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Thus, a court need not

14  accept as true conclusory allegations, unreasonable inferences, legal characterizations, or

15  unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*,

16  18 F.3d 752, 754-755 (9th Cir. 1994).

17          Leave to amend must be granted unless it is clear that the complaint's deficiencies

18  cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

19  When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas*

20  *v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

21  **B.      Preclusion of certain state law claims by SLUSA**

22          "SLUSA is part of a recent congressional attempt to rein in private securities litigation."

23  *Madden v. Cowen & Co.*, 576 F.3d 957, 963 (9th Cir. 2009).  "[T]he Securities Act of 1933 . . .

24  and the Securities Exchange Act of 1934 . . . have anchored federal regulation of vital elements

25  of our economy." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006).

26

27  _____

28          [2] As will be discussed below, Plaintiffs have agreed to dismiss without prejudice their
    claims under Cal. Civil Code § 1573 and the UCL.

                                        3

1  Congress enacted the Securities Litigation Reform Act of 1995 in order to prevent "perceived

2  abuses of the class-action vehicle in litigation involving nationally traded securities." *Id.* at 81.

3  However, "[r]ather than face the obstacles set in their path by the Reform Act, plaintiffs and

4  their representatives began bringing class actions under state law, often in state court." *Id.* at 82.

5  Congress enacted SLUSA "[t]o stem this shift from Federal to State courts and prevent certain

6  State private securities class action lawsuits alleging fraud from being used to frustrate the

7  objectives of the Reform Act". *Id.* (internal marks, alterations, and citation omitted).[3]

8  SLUSA precludes state law claims if the action is "(1) a 'covered class action' (2) 'based

9  upon the statutory or common law' of any state (3) being maintained by 'any private party,' and

10 if the action alleges (4) either 'an untrue statement or omission of material fact' or 'that the

11 defendant used or employed any manipulative or deceptive device or contrivance' (5) 'in

12 connection with the purchase or sale' (6) of a 'covered security.'" *Madden*, 576 F.3d at 965

13 (citing 15 U.S.C. § 77p(b)).  "Covered class actions" are essentially "private, state-law-based

14 suits involving a 'covered security' (that is, a nationally traded security . . .) 'in which damages

15 are sought on behalf of more than 50 persons or prospective class members.'" *Proctor v. Vishay*

16 *Intertechnology Inc.*, 584 F.3d 1208, 1217 (9th Cir. 2009) (citing 15 U.S.C. §§

17 78bb(f)(5)(B)(i)(I), (E)).

18 However, "SLUSA contains a savings clause that preserves certain types of state-law

19 claims that would otherwise be subject to its preclusion provision." *Madden*, 576 F.3d at 964.

20 The exception relevant to the instant case, known as the "Delaware carve-out", is found at 15

21 U.S.C. § 77p(d)(1).  *Id.*  The Delaware carve-out provides that a private party may maintain an

22 otherwise covered class action when the action "(1) involve[s] a 'communication with respect to

23 the sale' of the issuer's securities and (2) [is] 'based on the law of the' state in which 'the issuer'

24

25

26  [3] SLUSA was codified at 18 U.S.C. § 77p as an amendment to the Securities Act and at
18 U.S.C. § 78bb as an amendment to the Securities Exchange Act.  The Ninth Circuit treats case
27  law interpreting the two statutes as interchangeable. *Proctor v. Vishay Intertechnology Inc.*, 584
F.3d 1208, 1213 n.1 (9th Cir. 2009).  For convenience, the Court will rely on the amendments to
28  the Securities Act, as do Defendants.

4

1  is incorporated; the communication also must have been (3) 'made by or on behalf of' the issuer

2  or its affiliate (4) to the shareholders of the issuer (5) 'concern[ing]' specified shareholder

3  decisions, including a 'response to a tender or exchange offer.'" *Madden*, 576 F.3d at 969 (citing

4  15 U.S.C. § 77p(d)(1)(A), (B)(ii)).

5      SLUSA authorizes removal to federal district court of any covered class action that

6  meets the requirements of Section 77p(b), cited above.  If the claims are precluded under

7  SLUSA, the claim must be dismissed.  *See Proctor*, 584 F.3d at 1226 (noting that "SLUSA

8  unquestionably requires the dismissal of the precluded claim").  However, "SLUSA does not

9  require the dismissal of non-precluded claims along with precluded claims." *Id.* at 1227.  If a

10  claim is not precluded, "SLUSA requires remand once a federal court dismisses precluded

11  claims." *Id.* at 1228.

12  **C.     Voluntary dismissal of counts three and four**

13      Plaintiffs have agreed to dismiss without prejudice counts three and four of their

14  complaint, which allege violations of Cal. Civ. Code § 1573 and the UCL, respectively.

15  Plaintiffs state that they do not intend to "waiv[e] the ability to later raise issues relating to

16  whether Defendants' violations of those statutes speak to their [fiduciary duties] and to the issue

17  of whether the merger process satisfied entire fairness standards".  Plaintiff's Mot. to Remand at

18  4 n.1.  Defendants argue that the counts must be dismissed with prejudice because they are

19  precluded by SLUSA.  To address this argument, the Court  first must determine whether the

20  counts would be precluded by SLUSA and, if so, whether it is clear that the complaint's

21  deficiencies could not be cured by amendment.  *Lucas*, 66 F.3d at 248.

22      The Court concludes that counts three and four would be subject to dismissal under

23  SLUSA.  It is undisputed that the claims are based on California law, are brought by private

24  parties, and regard a covered security.  The counts are premised on specific alleged

25  misrepresentations and deceptive devices.  *See* Complaint ¶¶ 47, 52.  It is undisputed that the

26  allegations in the complaint are "in connection with" the purchase or sale of a covered security.

27  *See Dabit*, 547 U.S. at 85 (finding that, to be "in connection with" for purposes of the SLUSA,

28  "it is enough that the fraud alleged 'coincide' with a securities transaction – whether by the

5

1    plaintiff or by someone else."). Though RTI was a private company, Thermage was publicly

2    traded, and the acts alleged in the complaint are connected with the Thermage merger. Finally,

3    the counts are a "covered class action" because they sought damages on behalf of fifty or more

4    prospective class members. Complaint ¶¶ 49, 54.

5         Thus, the issue is whether amendment could affect this legal analysis. A UCL claim may

6    be premised on conduct that is not necessarily deceptive or misleading. Put another way,

7    Plaintiffs potentially could allege conduct that was entirely honest but nonetheless unfair.

8    Although Plaintiffs' claim for constructive fraud obviously could not be amended in a way that

9    would avoid alleging deceptive conduct, Plaintiffs could amend their claim to seek only non-

10   monetary, equitable relief, thereby avoiding preclusion as a "covered class action". The Ninth

11   Circuit has recognized that "[a]llowing amendment of claims to avoid dismissal could allow

12   plaintiffs to 'artfully plead' their way around federal jurisdiction and back into state court – by

13   some accounts, precisely what SLUSA was meant to prevent." *U.S. Mortg., Inc. v. Saxton*, 494

14   F.3d 833, 843 (9th Cir. 2007) (citing *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294,

15   304 (3rd Cir. 2005)). Nonetheless, Ninth Circuit case law also acknowledges that "granting or

16   denial of leave to amend is ordinarily a matter left to the discretion of the district court" and held

17   "that SLUSA does not prohibit amendment of the complaint after removal." *Id*. at 843.

18        Courts within this district "that have confronted the issue have also recognized the

19   inequity of dismissing otherwise valid and viable state law claims on the ground that plaintiff

20   pled – perhaps inadvertently – a cause of action that may be construed as federal in nature."

21   *Saxton*, 494 F.3d at 843; *see, e.g., Schuster v. Gardner*, 319 F. Supp. 2d 1159, 1164 (S.D. Cal.

22   2003) (allowing a plaintiff to amend a claim for breach of fiduciary duty to avoid the SLUSA

23   element concerning "in connection with a purchase or sale of a security" because the claim was

24   inadvertently plead). Accordingly, the Court will permit dismissal of counts three and four

25   without prejudice.[4]

26

27        [4] However, as discussed under Section II.E.1, *infra*, merely seeking equitable relief in the
     form of unwinding the merger may not be sufficient to avoid preclusion of the claims as a
28   covered class action.

6

1  **D.      Counts one, five, and six and the Delaware carve-out**

2        Plaintiffs' complaint includes three counts alleging violation of common law: breach of

3  fiduciary duty (count one), violation of the "entire fairness" standard (count five), and

4  conspiracy (count six).  As a preliminary matter, Defendants contend that count five and six do

5  not state independent claims for relief.  As to count six, "to state a cause of action for

6  conspiracy, the complaint must 'allege: (1) the formation and operation of the conspiracy; (2)

7  the wrongful act or acts done pursuant thereto; and (3) the damage resulting.'" *Wade v. 20th*

8  *Century Ins. Co.*, 206 Cal. App. 3d 32, 38 (Cal. App. 2d Dist. 1988).  The complaint adequately

9  alleges that Defendants coordinated efforts to perform wrongful acts, that all three individual

10  defendants served on RTI's board of directors, and that all three allegedly engaged in

11  inappropriate conduct regarding the merger with Thermage.  Complaint ¶¶ 10-12, 26.  Plaintiffs

12  allege that the merger violated several applicable statutes and that they were damaged as a

13  result.

14        As to count five, Defendants are correct that violation of the "entire fairness" standard is

15  not a claim for relief in and of itself.  Instead, "entire fairness" appears to be the test applied

16  when analyzing a breach of fiduciary duty. *See Interactive Multimedia Artists v. Superior*

17  *Court*, 62 Cal. App. 4th 1546, 1552 (Cal. App. 2d Dist. 1998) (citing *Cinerama, Inc. v.*

18  *Technicolor*, 663 A.2d 1156, 1172 (Del. 1995))*.*  Count five thus is essentially subsumed under

19  count one.

20        The parties appear to agree that counts one, five, and six are precluded by SLUSA unless

21  the Delaware carve-out applies.  The three claims are covered class actions because they seek

22  damages for a putative class of more than fifty individuals.  They are based on state common

23  law, they are maintained by a private party, and are premised on some type of misrepresentation

24  or deceptive device in connection with the purchase or sale of a covered security.

25        The Delaware carve-out applies to actions  "based upon the statutory or common law of

26  the State in which the issuer is incorporated".  15 U.S.C. § 77p(d)(1).  RTI was incorporated in

27  Delaware.  Complaint ¶ 13.  Accordingly, Plaintiff argues that counts one, five, and six are not

28  precluded by SLUSA.  However, Defendants point out that Plaintiffs have not sued them under

7

Delaware law.  "A plaintiff suing in a California court bears the burden of "invok[ing] the law of a jurisdiction other than California," *Madden*, 576 F.3d at 972 (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).  "[C]laims are not 'based on' the law of a state when they do not refer to or rely on that state's common or statutory law".  *Id.*  The factual allegations of the complaint mention California at length and Delaware somewhat in passing.  *See, e.g.,* Complaint ¶ 41 (alleging that "RTI has virtually no business connection with Delaware" in the claim under Cal. Corp. Code § 2115).  Though the complaint does refer to both RTI and Thermage as Delaware corporations, it does not specifically refer to or involve Delaware law at any point, and it does reference California law specifically.  At least as to the conspiracy count, Plaintiffs have not met their burden, and the claim will be dismissed as precluded by SLUSA.

Plaintiffs nonetheless argue that their reference to the "entire fairness" standard in count five implicitly references Delaware state law regarding fiduciary duties.  Defendants point out that several other states, including California, have adopted constructs that are very similar to "entire fairness", citing to *Belcher v. Birmingham Trust Nat'l Bank*, 348 F. Supp. 61, 107 (D. Ala. 1968) (citing to *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599 (1921) for the proposition of "entire fairness"), *Lippman v. Shaffer*, 836 N.Y.S.2d 766, 772 (citing to both New York and Delaware law for support of the "entire fairness" standard), *Johnson v. Witkowski*, 573 N.E.2d 513, 521 (Mass. App. Ct. 1991) (applying the "entire fairness" standard as a concept of Massachusetts law), and *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 128 (Cal. App. 2d Dist. 1985) (citing to a "good faith" and "inherent fairness" standard under California law).  They contend that the Court should not infer that Plaintiffs intended to sue under Delaware law merely because their complaint uses the term "entire fairness".

Plaintiffs argue that, because *Heckmann* did not refer to "entire fairness" in its analysis of California's similar common law scheme, there is a meaningful distinction between "entire fairness" and "inherent fairness".  A more recent appellate decision demonstrates that California courts are at least familiar with the concept of "entire fairness" as it relates to Delaware law.  *See Interactive Multimedia Artists v. Superior Court*, 62 Cal. App. 4th 1546, 1552 (Cal. App. 2d

8

1   Dist. 1998).  California's own "inherent fairness" standard appears to be well established.  *See*

2   *In re Real Estate Assocs. P'ship Litig.*, 223 F. Supp. 2d 1109, 1137 (C.D. Cal. 2002) (discussing

3   California's "inherent fairness doctrine").

4          Despite the complexity added by SLUSA, in the context of a motion under Fed. R. Civ.

5   P. 12(b)(6), the Court still must view the complaint in the light most favorable to the plaintiff.

6   Because California courts consistently have used the term "inherent fairness" and have tended to

7   view "entire fairness" as a construct of Delaware law, it is not unreasonable to infer that

8   Plaintiffs intended to sue for breach of fiduciary duty under Delaware common law.

9   Accordingly, the Court concludes that counts one and five are covered by the Delaware carve-

10  out and not precluded by SLUSA.  That said, if Plaintiffs choose to amend their other claims,

11  they should state explicitly the law upon which they rely.

12          **E.      Count two and SLUSA preclusion**

13          Defendants argue that count two, which  alleges a violation of Cal. Corp. Code § 2115

14  ("Section 2115"), is precluded by SLUSA.  Section 2115 imposes certain sections of the

15  California Corporations Code on foreign corporations that conduct a requisite level of business

16  in California.  *See* Cal. Corp. Code § 2115(a).  Among other things, a foreign corporation

17  subject to Section 2115 must comply with Cal. Corp. Code § 1201, which requires cumulative

18  voting for merger approvals.  *See* Cal. Corp. Code § 1201(a) and Cal. Corp. Code § 2115(b).

19  Plaintiffs allege that they were wrongfully denied a cumulative vote on the merger and argue

20  that this claim is not precluded by SLUSA.  They contend that the claim is neither a "covered

21  class action" nor predicated upon a misrepresentation in connection with a securities transaction.

22          **1.      Covered securities**

23          Plaintiffs argue that the claim is not a "covered class action" as defined by SLUSA

24  because it seeks only a judicial declaration that the merger is "null and void."  Complaint ¶ 44.

25  However, all of the other counts in the complaint seek damages.  As discussed above, courts are

26  wary of "artful pleading" to get around SLUSA preclusion.  *See* S. Rep. No. 105-182, at 8

27  (1998):

28          [W]hile the Committee believes that it has effectively reached those actions that could be

9

used to circumvent the reforms enacted by Congress in 1995 as part of the Private
Securities Litigation Reform Act, it remains the Committee's intent that the bill be
interpreted broadly to reach mass actions and all other procedural devices that might be
used to circumvent the class action definition .

Plaintiffs filed their complaint nearly one year after the completion of the merger between RTI
and Thermage.  A considerable amount of time may pass between now and the ultimate
resolution of this case.  The passage of time would make it virtually impossible for a court to
unwind the merger.  This is not a case in which Plaintiffs brought suit before the merger seeking
a temporary restraining order or a preliminary injunction.  Despite the fact that RTI disclosed the
existence of Section 2115 and its potential effect before the merger, Complaint ¶¶ 31-32,
Plaintiffs did not sue until well after the merger was consummated.  Under these circumstances,
the Court concludes that count two is covered by SLUSA.

### 2.    Allegations of misrepresentations and omissions

Plaintiffs also argue that the claim is not precluded because it is not predicated upon a
misrepresentation in connection with a securities transaction.  Plaintiffs rely on *In re Charles
Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009).  In that case, the plaintiffs
alleged both violations of state law and federal securities laws.  The complaint alleged several
misrepresentations that underpinned the federal securities claims.  The court found it should
"ignore extraneous allegations and focus on the gravamen of the complaint." *Id*. at 551 (citing
*LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008)).  The plaintiffs "readily agreed" that
the defendant properly disclosed the information relevant to the state law claims. *Id.*
Accordingly, the court concluded that the state law claims were not precluded because they were
not "predicated upon a misrepresentation in connection with a securities transaction." *Id.*

Defendants contend that *Schwab* is distinguishable, arguing that the plaintiffs in *Schwab*
alleged "two separate theories of liability".  Def.'s Opp'n to Remand at 14.  The
*Schwab* plaintiffs' federal claims alleged that the "defendants made several misrepresentations
regarding the investment policies and risk profile of the fund." *Schwab*, 257 F.R.D. at 543.
Each of the plaintiffs' state law claims "assert[ed] a violation arising from an allegedly
unauthorized change of the fund's concentration policy". *Id.* at 551.  As mentioned above, the

10

1   "plaintiffs readily agree[d] that Schwab properly disclosed the change in its concentration policy

2   but argue[d] that the change was nevertheless improper." *Id.*  In the instant case, Defendants

3   contend that Plaintiffs only have alleged the existence of a single "overarching manipulative

4   scheme to deprive RTI's common shareholders of a fair merger process as the basis of each of

5   their claims", Def.'s Opp'n to Remand at 14, and that Plaintiffs may not amend one claim to

6   exclude the references to misrepresentations that are part of the overarching scheme.

7           Defendants argument is unpersuasive.  In *Schwab*, the defendant was accused of

8   engaging in a scheme that "unwittingly exposed [the plaintiffs] to significant risks, and as the

9   nation's credit crisis unfolded, those risks [led] to substantial losses." *Schwab,* 257 F.R.D. at

10  542.  The defendants' misrepresentations were one means of effectuating that scheme.  The

11  change in the fund's concentration policy was another means of furthering that scheme:  "the

12  fund took on significantly greater risk by extending its average portfolio duration beyond two

13  years and by concentrating a significant portion of its portfolio in riskier assets such as

14  mortgage-backed securities." *Id.*  Although there are differences, this case is similar in that

15  Plaintiffs allege that Defendants used multiple means to effectuate the wrongful merger,

16  including misstatements and denying a vote to the holders of common shares.

17          Nonetheless, the Court concludes that claim is precluded under SLUSA.  The Section

18  2115 claim incorporates by reference all of the preceding paragraphs of the complaint.  These

19  paragraphs include several allegations of misrepresentations connected with voting rights. *See,*

20  *e.g.,* Complaint ¶ 29 ("the RTI Board of Directors . . . did not provide RTI shareholders

21  information about the merger or their rights . . . .  Defendants claimed to have obtained

22  sufficient votes to permit the merger to take place without a formal proxy process as required by

23  law . . . .  Those statements were false.").  While, in theory, Defendants could have violated

24  Section 2115 without engaging in any relevant misrepresentations, the complaint expressly

25  alleges misrepresentations and omissions in connection with the Section 2115 violation.

26  "Misrepresentation need not be a specific element of the claim to fall within [SLUSA's]

27  preclusion." *Proctor*, 584 F.3d at 1222.  Unlike the plaintiffs in *Schwab*, Plaintiffs in the instant

28  case have not "readily" agreed that Defendants made accurate representations regarding their

11

1    ability or right to vote in the merger.  Under a  fair reading of the complaint, Plaintiffs clearly

2    allege at least some degree of misrepresentation with respect to their Section 2115 claim.

3              **3.      Plaintiffs' ability to cure through amendment**

4              It is conceivable that Plaintiffs could amend their complaint to avoid SLUSA preclusion.

5    In document filed with the SEC on November 24, 2008, Defendants disclosed the possibility of

6    a shareholder challenge under Section 2115 that could delay or prevent the merger.  Complaint

7    ¶¶ 31-32.  Defendants stated that "[RTI] may need to seek approval of its stockholders in a

8    manner consistent with Section 2115".  *Id.* at 32.  Plaintiffs could re-assert this claim, readily

9    conceding that Defendants accurately disclosed potential liability under Section 2115 but

10   arguing that the denial of a vote nonetheless was improper.

11             In *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009), the plaintiffs

12   amended their complaint to state that "[n]one of the causes of action stated herein are based

13   upon any misrepresentation or failure to disclose material facts to plaintiffs".  The Sixth Circuit

14   disregarded the disclaimer, holding that it must look to "the substance of a complaint's

15   allegations in applying SLUSA."  *Id.*  The court dismissed the claims, concluding that the

16   plaintiffs' claims for breach of fiduciary duty, unjust enrichment, and breach of contract all were

17   precluded because the plaintiffs also stated that "'[t]he gravamen of this Complaint is that the

18   defendants did not deal honestly, ethically, fairly, and/or in good faith with [the defendant's]

19   Beneficiaries.'"  *Id.* at 311.  The court observed that:

20             [SLUSA] does not ask whether the complaint makes "material" or "dependent"
             allegations of misrepresentation in connection with buying or selling securities.  It asks
21           whether the complaint includes these types of allegations, pure and simple.

22   *Id.*

23             *Proctor* also involved amendments to the complaint regarding allegations of

24   misrepresentations.  In that case, the plaintiff's second amended complaint included previously

25   asserted claims for breach of fiduciary duty while adding a new claim for quasi-appraisal.

26   *Proctor*, 584 F.3d at 1215.  An amendment to the second amended complaint added allegations

27   of misrepresentations, but the amendment expressly applied only to the claims for breach of

28   fiduciary duty.  *Id.* at 1223 .  The class action claim for breach of fiduciary duty was dismissed

                                                    12

1   because it "rest[ed] on allegations of misrepresentations or omissions of a material fact in

2   connection with the purchase or sale of a covered security". *Id.* at 1221-1222 (internal citations

3   and alterations omitted).  However, the quasi-appraisal claim was not dismissed because it was

4   "lacking any reference to material omissions and misrepresentation". *Id.* at 1223.

5        Both *Segal* and *Proctor* involved disclaimers regarding allegations of

6   misrepresentations.  In *Segal*, the disclaimer came *after* an original allegation that implied

7   misrepresentations in connection with the purchase or sale of a covered security.  The court did

8   not honor the disclaimer.  In *Proctor*, the disclaimer merely maintained the status quo: the

9   original claim for quasi-appraisal did not allege misrepresentations, and the plaintiffs made clear

10  that the amendment was not intended to add those allegations to the particular claim.  This

11  distinction is not without significance, particularly because courts must be concerned about

12  artful pleading that could circumvent the intended effect of SLUSA.

13       However, as discussed above, "SLUSA does not prohibit amendment of the complaint

14  after removal," and district courts have given leave to amend to allow a plaintiff to avoid

15  inadvertently pleading a federal claim.  *Saxton*, 494 F.3d at 843.  The complaint in this case has

16  features that suggest that Plaintiffs may have plead a federal claim inadvertently. Although it

17  incorporates by reference other paragraphs of the complaint, count two itself does not

18  specifically allege a misrepresentation.  The complaint alleges that Defendants *did* disclose the

19  existence of Section 2115 and its potential effect before the merger was consummated.

20  Therefore, leave to amend count two will be granted.

21       **4.      Plaintiffs' ability to cure the defect in light of the internal affairs doctrine**

22       Defendants argue alternatively that the internal affairs doctrine requires that Plaintiffs'

23  Section 2115 claim be dismissed with prejudice.  They contend that, even if SLUSA preemption

24  could be avoided, Section 2115 conflicts with Delaware law and cannot apply to RTI.  The

25  internal affairs doctrine seeks to ensure that the internal affairs of corporations are not subjected

26  to the conflicting laws of various states.  "[U]nder the California choice of law principle known

27  as the 'internal affairs doctrine,' this court must look to the law of the state of incorporation with

28  respect to matters involving the regulation of [RTI's] 'internal affairs.'" *Patriot Sci. Corp. v.*

13

1    *Korodi*, 504 F. Supp. 2d 952, 956 (S.D. Cal. 2007) (citing *State Farm Mut. Auto. Ins. Co. v.*

2    *Superior Court*, 114 Cal. App. 4th 434 (2003)).  This proposition also has been recognized by

3    Delaware state courts, *see VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108

4    (Del. 2005), and the Supreme Court, *see CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90

5    (1987).

6           Whether this Court even has jurisdiction to reach this question in the absence of an

7    otherwise viable non-precluded claim is unclear.  Because it remains to be seen whether

8    Plaintiffs can state such a claim under Section 2115, the Court declines to address that issue

9    here.

10                                    **III.  DISPOSITION**

11          Accordingly, the Court will dispose of Defendants' motion to dismiss as follows:

12    •        The motion is denied as to counts one and five.

13    •        The motion is granted as to counts two and six, with leave to amend.

14    •        Counts three and four are dismissed without prejudice.

15          Any amended pleading shall be filed within thirty (30) days of the date of this order.

16    The Court will defer determination of Plaintiffs' motion pending amendment of the complaint.

17

18    **IT IS SO ORDERED**

19

20    DATED: 4/8/ 2010

21                                                   JEREMY FOGEL
                                                     United States District Judge

22

23

24

25

26

27

28

Case Number C 10-262 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION ETC.
(JFEX1)